**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MCALAN DUNCAN, CROSS FLS, LLC,** | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Case No. **3:15-cv-00977-P** |
| **FRANK MAJORIE,** | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION AND SUPPORTING MEMORANDUM
TO TRANSFER AND/OR DISMISS THE CASE**

**NOTICE TO COURT:**
**This motion seeks relief under Texas CPRC §§ 27.001 et seq., which requires the setting of
a hearing no later than the thirtieth day after the date of service of the motion unless the
docket conditions of the Court require a later hearing. *See* CPRC § 27.004.**

THE MAJORIE FIRM LTD.
3514 Cedar Springs Road
Dallas, Texas 75219
214-522-7400 Phone
214-522-7911 Fax

Of counsel:

Francis B. Majorie
TBN 12851420
fbmajorie@themajoriefirm.com

**Table of Contents**

**THE MOTION** ..................................................................................................................1

**NATURE AND STAGE OF PROCEEDINGS** ............................................................2

The Nevada Federal District Court Establishes The Claims Recovery Trust And The Related Notice Of Claims Assignment Procedure As An Important Part Of The Asset Resolution Bankruptcy Cases ...............................................................................................................2

The September Order Specifically Authorized The CRT To Submit Claims Assignment Notices To Its Beneficiaries .....................................................................................4

The September Order Authorized The CRT To Retain Majorie As Counsel .........................4

The September Order Reserved Jurisdiction In The Nevada District Court ...........................5

The September Order Reserved Jurisdiction Over Duncan And Cross ..................................6

Duncan And Cross Are Sued In Nevada District Court And The CRT Issues A Notice Of Claims Assignment Under The September Order .....................................................................6

Duncan's Claims That The CRT Representatives Tortiously Interfered With His Fees Are Dismissed "On The Merits" .....................................................................................................8

Duncan And Cross Sue Majorie ............................................................................................10

**THIS CASE SHOULD BE TRANSFERRED TO THE NEVADA FEDERAL DISTRICT COURT** ....................................................................................................................12

Factors Applicable To Transfer .............................................................................................12

The Factors Support Transfer Of This Case To Nevada District Court ..................................13

The Interests of Justice Factors Strongly Support Transfer ...................................................14

The "Convenience" Factors Support Transfer ........................................................................15

**THE COURT SHOULD DISMISS THE CASE UNDER FRCP 12(B)(6)** ............................16

All Four Counts Asserted Against Majorie Are Barred By Litigation Privilege ......................17

The Tortious Interference Claims (Counts 2 and 4) Are Also Barred By The Legal Justification Doctrine ....................................................................................................................................19

The Malicious Prosecution Count (Number 3) Fails To Allege Elements Of A Claim.............20

Alternatively, The Court Should Order Plaintiffs To Re-Plead .................................................21

**THE COURT MUST DISMISS THIS CASE UNDER TEXAS' "ANTI-SLAPP" STATUTE** ......................................................................................................................................22

**CONCLUSION** ........................................................................................................................25

## Table of Authorities

**CASES**

*In re Volkswagen of Amer., Inc.*, 545 F.3rd 304 (5th Cir. 2008)................................13

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 677 F. Supp. 2d 987 (W.D. Tenn. 2010). ........................................................................................................13

*Alexander v. The Steel Law Firm, P.C. (In re Terry Mfg. Co. Inc.)*, 323 B.R. 507 (Bankr. M.D. Ala. 2005).......................................................................................................13

*Official Comm. of Unsecured Creditors of Grumman Olson Industries, Inc. v. McConnell (In re Grumman Olson Industries, Inc.)*, 329 B.R. 411 (Bankr. S.D.N.Y. 2005)...........................13

*A.B. Real Estate, Inc. v. Bruno's, Inc. (In re Bruno's, Inc.)*, 227 B.R. 311 (Bankr. N.D. Ala. 1998).......................................................................................................................14

*In re Volkswagen of Am., Inc.*, 371 F.3d 201 (5th Cir. 2004)(*per curiam*)("Volkswagen I") ...16

*Iqbal v. Ashcroft*, 129 S. Ct. 1937 (2009) ........................................................................16, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................16, 17, 20, 22

*Jacquez v. Procunier*, 801 F.2d 789 (5th Cir. 1986)........................................................17

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U. S. 336 (2005)........................................17

*Lovelace v. Software Spectrum*, 78 F.3d 1015 (5th Cir. 1996) .....................................17

*Scanlan v. Tex. A&M Univ.*, 343 F.3d 533 (5th Cir. 2003) .........................................17

*Intel Corp. v. IntelLogistics, Inc.*, No. 05-cv-2255, 2006 U.S. Dist. LEXIS 34361 (S.D. Tex. May 30, 2006) .............................................................................................................18

*Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909 (Tex. 1942)....................................18

*McIntyre v. Wilson*, 50 S.W.3d 674 (Tex. App. – Dallas 2001, pet denied)...........................18

*Johnson v. Wichita Falls Housing Authority*, No. 2-06-416-cv, 2007 Tex. App. LEXIS 9192, (Tex. App.--Fort Worth Nov. 21, 2007, no pet.).............................................................18

*James v. Brown*, 637 S.W.2d 914 (Tex. 1982)................................................................18

*Odeneal v. Wofford*, 68 S.W.2d 819 (Tex. App. – Dallas 1984, writ ref'd n.r.e.) ...................18

*Russell v. Clark*, 620 S.W.2d 865 (Tex. App. – Dallas 1981, writ ref'd n.r.e.) ......................18

*Hurlbut v. Gulf Atl. Life Ins.*, 749 S.W.2d 762 (Tex. 1987)..........................................18

*Swank v. Sverdlin*, 121 S.W.3d 785 (Tex. App—Houston [1st Dist.] 2003, pet. denied) .........19

*Baty v. ProTech Ins. Agency*, 63 S.W.3d 841 (Tex. App. 2001)....................................19

*CS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426 (Tex. 1997) .................................19

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74 (Tex. 2000) ..................19

*Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989)..........................................20

*Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54 (Tex.App.—Houston [1st Dist.] 2011, no pet.) ...........................................................................20

*Mans and Smith Partnership v. D.K. Boyd Oil and Gas Co., Inc.*, 223 S.W.3d 1 (Tex.App.—El Paso 2005, pet. denied) .............................................................................................20

*Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203 (Tex. 1996) .................................................20

*McCall v. Tana Oil & Gas Corp.*, 82 S.W.3d 337 (Tex. App. – Austin 2001).........................21

*Finlan v. Dallas ISD*, 90 S.W.3d 395 (Tex. App. – Eastland 2002, pet. denied) .....................21

*NT Dev., Inc. v. Petersen*, 79 S.W.3d 230 (Tex. App. – Fort Worth 2002, pet. denied)............21

*Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119 (Tex. App.--Houston [14th Dist.] 1994, no writ) ..................................................................................................................................21

*Louis v. Blalock*, 543 S.W.2d 715 (Tex. App.--Amarillo 1976, writ ref'd n.r.e.).....................21

*Turner v. KTRK TV, Inc.*, 38 S.W.3d 103 (Tex. 2000) .............................................................22

*Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164 (5th Cir. 2009) ....................................23

*James v. Calkins*, Cause No. 01-13-001180-CV (Tex. App. – 1st Dist. Aug. 21, 2014)...........24

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742 (5th Cir. 2014)..............................24

## STATUTES

28 U.S.C. 1452 .........................................................................................................................12

28 U.S.C. 1334 .........................................................................................................................12

28 U.S.C. 1441 .........................................................................................................................12

28 U.S.C. 1331 .........................................................................................................................12

28 U.S.C. 1412 ..............................................................................................................12, 13, 14

28 U.S.C. 1404 ..............................................................................................................12, 13, 14

28 U.S.C. 1937 .........................................................................................................................17

Tex. Civ. Prac. & Rem. Code §§ 27.001 et seq ......................................................22, 23, 24, 25

## RULES

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1, 16, 25

Fed. R. Civ. P. 11 ......................................................................................................................17

Fed. R. Evid. 201(f)...................................................................................................................17

## TREATISES

5 Wright & Miller §1216 ..........................................................................................................18

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and other applicable law, Defendant Frank Majorie ("Majorie") respectfully submits this motion and accompanying memorandum of law to transfer this case to the United States District Court for the District Of Nevada and then to dismiss it for failing to state claims upon which relief can be granted and/or under applicable "SLAPP" statutes, as follows:

## I.

## THE MOTION

This is a case brought by a lawyer and his loan servicing company against the lawyer representing a liquidating trust (the "CRT") in several *pending* adversary proceedings and contested matters against them. The adversary proceedings and contested cases arise in, out of, and relating to fourteen affiliated bankruptcy cases (the "Asset Resolution Bankruptcy Cases"), which are presided over by District Judge Robert C. Jones of the United States District Court for the District of Nevada (the "Nevada District Court").

The plaintiff lawyer and his servicing company claim that their opposing counsel is liable for "more than $1,000,000" of damages for defamation, tortious interference, and malicious prosecution. The plaintiffs base their claim on what they call the "CRT Solicitation Letter," which was a document sent by the CRT to its beneficiaries incorporating a pleading filed by the CRT's counsel and notifying CRT beneficiaries of their right to participate in or opt out of the litigation involving the claims asserted in that pleading. *The plaintiffs assert that opposing counsel is not protected from the immunity "for lawyers suing the opposing party's attorney" available under Texas law, despite the fact that the allegedly defamatory document was a Notice of Claims Assignment sent by the CRT to its own beneficiaries pursuant to a procedure created and governed by an order entered by the Nevada District Court.*

On March 30, 2015, Defendant timely removed the case to this Court due to the existence of bankruptcy jurisdiction, the existence of federal question jurisdiction because Plaintiffs' state law claims contained embedded federal questions involving interpretation and application of the Nevada District Court's order, and/or the existence of federal question jurisdiction because the Nevada District Court expressly preserved jurisdiction over matters involving the interpretation and application of that order. [Dkt. 1]

Defendant now hereby moves for the following relief: (a) transfer of the case to the Nevada District Court; and (b) dismissal of the case for failing to state claims upon which relief may be granted and/or under applicable "SLAPP" statutes. Defendant also requests that the Court reserve Defendants' right to seek through separate or supplemental motion(s) attorney's fees, sanctions, and such other relief to which he is entitled under the law and the facts. The grounds and authorities supporting the motions to transfer and dismiss are set forth below. [1]

## II.

## <u>NATURE AND STAGE OF PROCEEDINGS</u>

**A.** **The Nevada Federal District Court Establishes The Claims Recovery Trust And The Related Notice Of Claims Assignment Procedure As An Important Part Of The Asset Resolution Bankruptcy Cases<u>.</u>**

In late 2009, United States District Judge Robert C. Jones of the United States District Court for the District of Nevada entered an order withdrawing the automatic reference of fourteen affiliated bankruptcy cases known as the "Asset Resolution Bankruptcy Cases." *See* Exhibit 2-9 (Order) at 4, ¶ 4. For the next two and half years or so, across a span of over 1900

---

[1]     This motion is based upon the Original Petition filed in Texas state court by the Plaintiffs, other items in the docket (referred to as "Dkt. __"), and the exhibits referred to herein as "Exhibit __."  Exhibits 2-1 through 2-18 are the exhibits which have already been submitted to the Court [Dkt. No. 2] in connection with Defendant's Petition for Removal, and are incorporated herein by reference to preserve resources. References to Exhibits 19 through 31 herein are to the exhibits being submitted concurrently with this motion and memorandum.

<u>**Defendant's Motion And Memorandum To Transfer And Dismiss -- Page 2 of 25**</u>

docket entries, Judge Jones ruled on motions, held hearings, presided over a six week jury trial, and entered dozens of orders involving core and non-core issues arising in, out of, and relating to those bankruptcies. One of those orders was entered on September 6, 2012 (the "September Order"). *See* Exhibit 2-9.

The September Order was 167 pages long and met with only a few objections (which were ultimately resolved). The September Order was entered pursuant to the District Court's bankruptcy jurisdiction, as well as its supplemental *in rem* jurisdiction in a civil case generally known as the "892 Case." The 892 Case involved the debtors and approximately fifteen hundred individual investors (known as the "B&B DL Settling Clients," "direct lenders," or "DLs") who held tenant-in-common interests in secured commercial loans which were either serviced by the Asset Resolution debtors before bankruptcy and/or in which the Asset Resolution bankruptcy estates also held tenant-in-common interests. *See* Exhibit 2-9 (September Order) at 3, ¶ 3. The September Order comprehensively addressed many significant issues facing the direct lenders, and has been the centerpiece for the resolution of dozens of contested matters and adversary proceedings since it was entered. *See* Exhibit 19 (Majorie Declaration).

One of the key components of the September Order was the formation of a liquidating trust, known as the Claims Recovery Trust, or "CRT". The September Order approved formation of the CRT and all of the terms of the liquidating trust agreement ("LTA") governing the CRT, which the order expressly incorporated "as an integral part of this Order to the extent permitted by law." *See* Exhibit 2-9 (Order) ¶ 149 & ¶ 151. The September Order declared that the purpose of the CRT was to enable direct lenders to "aggregate and jointly pursue" their claims against persons who caused them damages by appointing the CRT to "[i]nvestigate, pursue, sue on or defend, prosecute, compromise, adjust . . . or otherwise deal with and settle Causes of Action"

which they "Assigned" to the trust. *See* Exhibit 2-9 (Order) at ¶ 139 and at ECF page 109 (LTA), section 3.7.

Four aspects of the September Order are material to the claims asserted by the Plaintiffs in this case and to this motion:

**1.  The September Order Specifically Authorized The CRT To Submit Claims Assignment Notices To Its Beneficiaries**

First, the September Order and the LTA it incorporated and adopted by reference set forth a detailed "Loan Claim Assignment Procedure" under which the CRT was authorized to submit a "Notice Of Claims Assignment" to Direct Lenders who were beneficiaries of the trust to determine whether or not they wished to appoint the CRT to pursue such claims on their behalf. *See* Exhibit 2-9 (Order) at 52, ¶ 154 & (LTA) at ECF page 96. The September Order declared that the opportunity for DL beneficiaries "to decide if they wish to receive the benefits of the Trust . . . pursue their Loan Claims or take another course of action" is "an important feature" of the settlement approved and implemented by the order. Exhibit 2-9 (Order) ¶ 23 A. The September Order also declared that "the Assignments of Causes of Action . . . and any and all ballots and other communication relating thereto" did not, "are not and do not constitute . . . solicitation" under "any . . . federal or state statute, law, rule, or regulation. . . ." *See* Exhibit 2-9 (Order) at ECF page 53, ¶ 155 (bold added).

**2.  The September Order Authorized The CRT To Retain Majorie As Counsel**

Second, the September Order expressly approved the CRT's retention of Majorie and his firm as counsel to the CRT.  *See* Exhibit 2-9 (Order) ¶ 153). The September Order declared that "[r]etention of that firm by the Claims Recovery Trust was an important component of the Settlement being demanded by the B&B DL Settling Clients because that firm has demonstrated . . . a thorough knowledge of the facts and law applicable to the claims which will be litigated by

the Claims Recovery Trust. . . ." *See* Exhibit 2-9 (Order) ¶ 23 D). Majorie is a "Trust Representative" under the LTA, which means that: (a) Majorie is entitled to indemnification from the CRT under section 12.2; and (b) Majorie "enjoy[s] all of the privileges and immunities available to trustees under the Bankruptcy Code" (LTA section 12.1(a) at ECF page 149) and "liquidating trustees under liquidating trusts" (LTA section 12.1(d) at ECF page 150); and (c) Majorie "shall [not] be liable for any act or omission taken or omitted to be taken by [him] in good faith, other than acts or omissions which are finally judicially determined to have resulted substantially from such Person's own gross negligence or willful misconduct." (LTA at ECF pages 105 and 106).

### 3. The September Order Reserved Jurisdiction In the Nevada District Court

Third, the September Order expressly stated that the Nevada District Court reserved jurisdiction to supplement or amend the September Order "to the fullest extent permitted by law." Exhibit 2-9 (Order) at page 68, ¶ I. Section 3.8 of the LTA adopted in the September Order also declared that the LTA and the CRT "are subject to the continuing and exclusive jurisdiction of the Nevada federal District Court with respect to all material matters requiring interpretation or application of this Agreement, the Orders, or matters directly or indirectly pertaining to the Trust (for example, matters affecting the economics, standing, or affairs of the Trust)." Exhibit 2-9 (LTA) at ECF page 113, section 3.8. Section 15.2 of the LTA adopted by the September Order also provided that:

(i) the [Nevada federal District] Court shall have **exclusive jurisdiction** and venue over the Trust and its Causes of Actions, **as well as any claims that are commenced against the Trust to the fullest extent permitted by law**;

(ii) the Court shall have **jurisdiction to the greatest extent possible to . . . decide any claims or disputes which may arise or result from, or be connected with, this Agreement . . . or the transactions contemplated hereby**; and

(iii)   any and all actions related to the foregoing or to this Agreement, or to any action taken, or failed to be taken, by the Liquidating Trustee or Governing Committees **shall be filed and maintained in the Court** . . . ." (*See* Exhibit 2-9 (LTA) at ECF page 156) (bold added).

### 4.       The September Order Reserved Jurisdiction Over Duncan And Cross

Finally, the Nevada District Court approved Duncan's *pro hac vice* appearance in what was known as the "892 Case." *See* Exhibit 20 (Pro Hac Vice Order). The Nevada District Court also approved appointment Cross as loan servicer in two orders entered in the Asset Resolution Bankruptcy Cases. *See* Exhibits 21 and 22 (Orders). Although the September Order contained releases of claims, it specifically stated that it did not contain releases of Duncan or Cross. *See* Exhibit 2-9 (Order) at 60, ¶ 173(h) and (i). Paragraph 120 of the September Order therefore expressly ruled that "the Court shall continue to exercise jurisdiction with respect to Cross . . . and/or Duncan relating to matters over which this Court exercised jurisdiction in the 892 Case and/or the Asset Resolution Bankruptcy Cases." *See* Exhibit 2-9 (Order) at 41.

### B.       Duncan And Cross Are Sued In Nevada District Court And The CRT Issues A Notice Of Claims Assignment Under The September Order                                  -

On February 27, 2014, the B&B Settlement Trust (the "QST") commenced an adversary proceeding against Duncan, Cross, and the CRT interpleading $997,106.11 from $4.5 million of funds received by the QST from the Asset Resolution bankruptcy estate under the September Order. *See* Exhibit 2-17 (Order) at 1-2. That case—which is still pending in Nevada District Court—was styled *B&B Settlement Trust, by and through its trustee, Michael Coulson, Plaintiff, v. McAlan Duncan, Cross FLS, LLC, and The Claims Recovery Trust, by and through its trustee, William A. Leonard, Jr., Defendants*, Adversary No. 14-01032-RCJ (US D. Ct. Nev.)(the "QST Adversary Proceeding"). The QST is a qualified settlement trust formed to "maximize the value of the settlement" for its beneficiaries, the B&B DL Settling Clients, under the September Order. The QST filed the QST Adversary Proceeding because it was holding funds that Duncan claimed

to be due and owing to him as attorney's fees while various direct lenders who were beneficiaries of both the QST and the CRT objected to the payment of that cash to Duncan.  *See* Exhibit 2-17 (Order) at 2.

The CRT filed an answer and cross-claim (the "Cross-Claim") in the QST Adversary Proceeding which alleged that the CRT had received assignments of authority to object to the disbursements from some direct lender beneficiaries. *See* Exhibit 2-8. The CRT's Cross-Claim set forth detailed allegations supporting the direct lender's objections in over 90 paragraphs of the 110 paragraph pleading. The pleading also asked the Nevada District Court to:

> (a) rule that defendant Duncan is not entitled to receive any of Duncan Fee Set-Aside Funds which have been interplead in this case by the QST and those funds should be disbursed back to the QST for further distribution to the B&B DL Settling Clients; (b) rule that defendants Duncan and/or Cross must disgorge fees they have already received from B&B DL Settling Clients or out of funds belonging to them; (c) rule that defendants Duncan and/or Cross should be found liable for compensatory and other damages in such amounts established by the law and the facts.  (*See* Exhibit 2-8, at page 3, ¶ 6)

Defendant Majorie was the lawyer for the CRT who filed the pleading on its behalf. About two weeks later, on March 14, 2014, the CRT submitted a Notice Of Claims Assignment (the "CRT Notice") to the rest of its beneficiaries. (A copy of that Notice Of Claims is provided at pages 15 to 24 of Exhibit 2-7.) The CRT Notice was addressed to "Claims Recovery Trust Members" and expressly stated that it was being provided to direct lender beneficiaries "as a member or potential member of a sub-class of the Claims Recovery Trust ("CRT")." The Notice enclosed a copy of the Cross-Claim filed by Majorie and contained the following provision:

> As a member of the Claims Recovery Trust, you are being offered the opportunity to assign your claim (or the power to pursue that claim) against Duncan/Cross to a special beneficiary class within the CRT. As a member of this beneficiary class, you would be entitled to a distribution of money collected in connection with this lawsuit. It would also entitle you to any future reductions of Cross claimed administrative fees and the Duncan portion of the B&B legal fees if they are

reduced or eliminated through this action. A number of CRT members have already assigned their Duncan/Cross claims to this special CRT beneficiary class.

**There are two ways to assign your Duncan/Cross claim into the Claims Recovery Trust (1). You may specifically and affirmatively "OPT IN" within the first 20 days. (2) Your claim will be automatically assigned into the CRT on the 21st day unless you specifically "OPT OUT". If you chose not to participate in this action, then it is recommended that you "OPT OUT" prior to 20 days or your claim will automatically be assigned in.**

You will be sent a separate email with instructions how to immediately "Opt In" or "Opt Out".  (Bold in original)

The results of the CRT's notice procedure were then reported to the Nevada District Court in several sworn declarations. *See* Exhibits 22-27. Under that procedure, forty percent of the 1,026 DL beneficiaries of the CRT affirmatively "opted in" (although they did not need to do so) and only ten of the remaining sixty percent of the CRT beneficiaries "opted out." *See* Exhibit 23.

## C.    Duncan's Claims That CRT Representatives Tortiously Interfered With His Fees Are Dismissed "On The Merits"                                                        -

Duncan responded to the pleadings of the QST and the CRT by, among other things, filing a motion to dismiss the interpleader and a counterclaim and Amended Third Party Complaint (the "A3PC") against the CRT and CRT DL Committee Representative Donna Cangelosi ("Cangelosi"), among others. *See* Exhibit 2-10. In particular, Duncan alleged that, contrary to the express findings of the Nevada District Court in the September Order, the negotiations leading up to formation of the CRT were not at arms-length or in good faith (Exhibit 2-10, ¶ 24) and Majorie's retention by the CRT was improper (Exhibit 2-10, ¶¶ 29-31). Duncan also alleged that, "prior to the instant Complaint [Cross-Claim] being filed by Cangelosi and the CRT against Duncan, Cangelosi initiated two attempts to deprive Duncan of his contractual fees (¶60) and "Cangelosi & [fellow DL CRT Committee member] Knoles acting on behalf of the CRT then met with a representative from Bickel & Brewer" to "cut Duncan out of the

engagement agreement" so that there would be "substantial compensation to the CRT Committee Members." *See* Exhibit 2-10 ¶ 62. Duncan therefore sued Cangelosi and another CRT Committee member for tortious interference and conspiracy, claiming that they deprived Duncan of the "approximately $1,000,000" which was the subject of the QST's lawsuit. *See* Exhibit 2-10, ¶¶ 94-110.

The Nevada District Court dismissed "on the merits" Duncan's claims that the CRT Committee members had acted improperly by pursuing DL objections to his fees. *See* Exhibit 2-17 (Order) at 5/lines 13 & 17. Finding Duncan's allegations to be "incredibly weak and conclusory," the Nevada District Court held that a dispute over settlement funds between an attorney and a client cannot support a claim for damages by the attorney against the client:

> The social interests in protecting Cangelosi's actions and the nature of the relationship between the parties, *i.e.*, attorney and client, are the overwhelming considerations in the case. *See* Restatement (Second) of Tort § 767 (1979). It cannot be said to be improper interference with a contract for legal fees for a client to object to a person holding funds in trust that she, not her attorney, is entitled to them. (Exhibit 2-17 (Order) at 5/lines 13 & 17)

The Nevada District Court also dismissed the QST's interpleader claim on the ground that the QST had not clearly alleged that the CRT was in fact asserting objections to the distribution of funds to Duncan. *See* Exhibit 2-17 (Order) at 5-6. The Court held that the action would proceed as a request for declaratory judgment by the QST, based upon "related to jurisdiction under [28 U.S.C.] § 1334(b)." Exhibit 2-17 at 5-6. The Court then clarified its ruling in a second order indicating that the CRT was dismissed without prejudice and directing that the QST could amend its complaint to "replead the interpleader based on the CRT's representation that it in fact

challenges the payment to Duncan on behalf of one or more of its beneficiaries." *See* Exhibit 2-18 at 5.[2]

### D.    Duncan And Cross Sue Majorie

Before the QST and/or the CRT re-asserted their claims as contemplated by the Nevada District Court, Duncan and Cross sued the CRT's lawyer, Majorie, in Texas state court. The Original Petition filed by Duncan and Cross purports to assert state law claims against Majorie for defamation, tortious interference with contract, tortious interference with prospective relations, and malicious prosecution. *See* Exhibit 2-4. The gravamen of the Plaintiffs' claims is that Majorie is liable to Duncan and Cross for damages because the CRT pursued claims against them and sent a so-called "CRT Solicitation Letter" to "Duncan's clients" in connection with the QST Adversary Proceeding. Several points about the contentions in the Original Petition deserve emphasis.

First, the claims against Majorie are the same claims Duncan asserted against Majorie's clients in Nevada—claims which the Nevada District Court called "incredibly weak and conclusory" and dismissed "on the merits." In fact, the allegations asserted in the Original Petition against Majorie are lifted virtually *verbatim* from contentions asserted by Duncan and Cross against the CRT, Cangelosi, and another CRT Trust Representative in a surreply brief filed in the QST Adversary Action. *Compare* Exhibit 2-4 (Original Petition in removed Action) at pages 8-11 *with* Exhibit 2-7 (Cross Reply in Nevada federal court) at ECF pages 7 through 5 and

---

[2]    The Court also ruled that Cross was not a proper party to the Duncan fee dispute because it did not seek such fees for itself. Exhibit 2-17 (Order) at 6-7. The Court then noted in its second order that the CRT's cross-claims against Cross were dismissed without prejudice "only because there was no jurisdiction to hear them in the present case, the result of there being no interpleader jurisdiction supporting CRT's joinder as a defendant in the first instance." Exhibit 2-18 at 3. The Court also ruled that the CRT "may file a separate adversary claim against Cross, but any such claim must rest on its own jurisdictional footing."

with Exhibit 10 (Counterclaim and Amended Third Party Claim) at ECF pages 6-11 & 16-18 & 28-29.

Second, there is no question that Duncan and Cross filed the Texas lawsuit based on, relating to, and/or in response to Majorie's representation of the CRT and CRT DL Committee member Cangelosi in pending litigation against Duncan and Cross. The so-called "CRT Solicitation Letter" shows on its face that it was being sent *by the CRT solely to CRT beneficiaries* under the Court-approved Notice of Claims procedure established for the CRT. *See* Exhibit 2-7 (Cross "Reply") at ECF pages 14-23. The Original Petition also admits that Majorie is counsel to CRT and was acting as counsel to the CRT in connection with the matters giving rise to the Plaintiffs' alleged claims. *See* Exhibit 4 (Original Petition) at 7, ¶ 36 (Majorie "is also the CRT's counsel"), at 8, ¶ 39 ("Majorie acting as counsel for the CRT"), at 40, ¶ 40 (Cangelosi and Majorie sent the "CRT Solicitation Letter" to "manipulate Duncan's clients . . . into assigning their claims to the CRT"), 40, ¶ 41 ("to wrongfully induce Duncan's clients into assigning their claims to the CRT").

Third, the litigation against CRT lawyer Majorie was commenced at a time when there are numerous other *pending* adversary proceedings and contested matters in the Nevada District Court between the CRT or other DL-appointees (such as Cangelosi) on the one hand and Duncan and Cross on the other hand. These cases are referred to in detail in the Notice Of Removal [Dkt. 1] and the Notice Of Related Cases [Dkt.  4]

Fourth, although the Original Petition alleges that the so-called CRT Solicitation Letter "contains a host of defamatory statements concerning Duncan" (*see, e.g.*, ¶ 41), the Plaintiffs do not identify a single specific statement in either the Cross-Claim or the CRT Notice which they contend to be untrue. Rather, the Original Petition alleges that the 110-paragraph Cross-Claim

"was unsupported by any documentation or declarations and was completely devoid of any supporting facts" and that the CRT Solicitation Letter "misleadingly stated the allegations pled in the CRT Cross-Complaint was factual evidence in support of the CRT's claims to wrongfully induce Duncan's clients into assigning their claims to the CRT." *See* Exhibit 2-4 (Original Petition) ¶ 39.

Finally, although the Original Petition seeks damages of "over" one million dollars and that the CRT Solicitation Letter "effectively destroyed Plaintiff's reputation with their clients and potential clients in the industry as a whole," s*ee* Exhibit 4 (Petition) ¶ 59, the pleading fails to assert any facts showing an actual loss or damage of either the fees that are the subject to the QST's lawsuit (which the Nevada District Court *refused* to dismiss) or of any lost business.

## III.

### THIS CASE SHOULD BE TRANSFERRED TO THE NEVADA FEDERAL DISTRICT COURT

This case was timely removed to this Court: (a) under 28 U.S.C.§§ 1452(a) and 1334(b) because it is a civil proceeding  "arising under title 11, or arising in or related to cases under title 11;" and (b) under 28 U.S.C. §§ 1441 and 1331 because federal questions were embedded  in the state law claims and/or the Nevada District Court maintained jurisdiction over the interpretation and implementation of the September Order. Section 1412 of title 28 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1404(a) also provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendant moves to transfer this case to the Nevada District Court under either, or both, of sections 1412 and 1404(a).

A.      **Factors Applicable To Transfer**

The Fifth Circuit has identified several "private" and "public" factors relevant to the determination of whether to transfer litigation under for the convenience  of the parties and the interests of justice under section 1404: (1) relative ease of access to sources of proof, such as documents and evidence; (2) availability of  witnesses; (3) costs of attendance for witnesses; (4) other practicalities to make trial easy, expedition, and inexpensive; (5) court administrative difficulties; (6) local interests; (7) familiarity of the forum with the law of the case; and (8) avoidance of unnecessary problems of conflicts of law. *See In re Volkswagen of Amer., Inc.*, 545 F.3rd 304, 315 (5th Cir. 2008)(the first four factors are "private convenience" factors and the second four are "public interest" factors). The pendency of similar or related actions in the transferee court are also a factor in favor of transfer. *See, e.g., United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 994 (W.D. Tenn. 2010).

In determining the propriety of granting a motion to transfer venue of an action arising in, under, or related to a bankruptcy, '[t]here is a strong presumption in favor of maintaining venue where the bankruptcy case is pending." *Alexander v. The Steel Law Firm, P.C. (In re Terry Mfg. Co. Inc.),* 323 B.R. 507, 509 (Bankr. M.D. Ala. 2005). In fact, the district in which the underlying bankruptcy case is pending is *presumed* to be the appropriate district to hear and determine such proceedings. *Official Comm. of Unsecured Creditors of Grumman Olson Industries, Inc. v. McConnell (In re Grumman Olson Industries, Inc.),* 329 B.R. 411, 435 (Bankr. S.D.N.Y. 2005). The following section 1412 "interest of justice" factors are also considered: (1) the economics of estate administration; (2) the presumption in favor of  the "home court"; (3) judicial efficiency; (4) the ability to receive a fair trial; (5) a state's interest  in having its local controversies decided within its borders by those familiar  with its laws; (6) the enforceability of

any judgment rendered; and (7) the plaintiff's original choice of forum. *A.B. Real Estate, Inc. v. Bruno's, Inc. (In re Bruno's, Inc.)*, 227 B.R. 311, 324-26 (Bankr. N.D. Ala. 1998).

**B.     The Factors Support Transfer Of This Case To Nevada District Court**

The Court can and should transfer this case to the Nevada District Court under the factors to be considered under sections 1412 and/or 1404(a):

**1.     The Interest Of Justice Factors Strongly Support Transfer**

The interests of justice factors strongly support transfer to the Nevada District Court. The CRT was created by the September Order entered in that Court, the Asset Resolution estate is a debtor in that court and beneficiary of the CRT, the so-called "CRT Solicitation Letter" was issued by the CRT under the claims assignment procedure established by that court, the plaintiffs' claims require interpretation and application of the September Order entered by that court, and the Nevada District Court has expressly preserved jurisdiction to interpret and enforce the terms of the September Order. The Nevada District Court has presided over the Asset Resolution Bankruptcy Cases for six years and is thoroughly familiar with all of the extremely complicated issues and litigation history leading up to the formation of the CRT and the Notice procedure through which the CRT receives authority to litigate claims for its beneficiaries. There are also numerous other related cases pending in the Nevada District Court involving Majorie's clients, Duncan, and Cross. Transferring this "follow on" case to that district will enable that court to streamline issues *and, more fundamentally, avoid inconsistent rulings*.

For the foregoing reasons, the presumption in favor of "home court," economics of estate administration, judicial efficiency, "local interest" in having the issues involving the Notice of Claims Procedure resolved by the court which created that procedure, court administrative difficulties, other practicalities to make trial easy, expedition, and inexpensive, and familiarity

with the law to be applied to the issues strongly support transfer. In contrast, the "ability to obtain a fair trial" factor and the "unnecessary problems with conflicts of law" factor are neutral (but, in favor of transfer if "fairness" includes no risk of inconsistent adjudications).  Indeed, the only other factor—plaintiffs' choice of forum—should also be given no weight here, because that choice represents a clear effort to waltz around Judge Jones' express reservation of jurisdiction over issues arising out of the September Order, issues relating to the CRT (such as the notice procedure), and issues involving both Duncan and Cross "relating to matters over which th[e] Court exercised jurisdiction in the 892 Case and/or the Asset Resolution Bankruptcy Cases." *See* Exhibit 2-9 (Order) at 41. Thus, essentially all of the "interests of justice" considerations support a transfer of the case to Nevada District Court and none of them supports keeping the case here.

2.     **The "Convenience" Factors  Support Transfer**

The "private convenience" factors also support transfer of this case to Nevada District Court, for the following reasons.

First, the lawsuit by the QST and the other pending litigations involving the CRT, Duncan, and Cross will require disclosure in the litigation between those parties—but protection from disclosure to third parties who are also being sued by the CRT or the DLs—of communications by and to Duncan and Cross that are either confidential attorney-client communications and/or trade secrets, or both. Majorie had prepared and circulated and draft protective order which would provide such protections in the pending Nevada litigation before he was sued.  *See* Exhibit 28 (Majorie Dec.) ¶¶ 5 & 6. Transferring this case to Nevada so that it can be added to the other pending cases for discovery purposes would ensure "ease of access and sources of proof" while protecting against disclosures of information to other adversary parties.

Second, the trustee of the QST, the trustee of the CRT, and DL Committee member Cangelosi are located in Nevada. Other potential witnesses—such as DL Committee member Christina Knoles, DLs Carol Kesler (who presided over the Notice of Claims procedure), Daniel Newman (who was also involved in communications), and others are also located on the Western part of the country and have appeared in Nevada several times. Duncan and Cross are already litigants in Nevada District Court in the related pending cases. Majorie also appears in the Nevada District Court as counsel in those cases. *See* Exhibit 19 (Majorie Dec.). Thus, the availability and costs of attendance for witnesses factors counsel in favor of transfer. *See In re Volkswagen of Am., Inc.*, 371 F.3d 201, 204-05 (5th Cir. 2004)(*per curiam*)("*Volkswagen I*"). "When the distance between an existing venue for a trial of a matter and a proposed venue under 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relation to the additional distance to be travelled.").

## IV.

## THE COURT SHOULD DISMISS THE CASE UNDER FRCP 12(B)(6)

In addition or in lieu of transferring the case to Nevada District Court, the claims asserted against Majorie by Duncan and Cross should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief may be granted. FRCP 12(b)(6) provides for the dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal v. Ashcroft,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

The factual matter contained in the complaint must allege actual facts, *not* legal conclusions dressed up as facts. *Id.* at 1949-50 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Twombly,* 550 U.S. at 555). Additionally, the factual allegations of a complaint must state a plausible claim for relief. *Id.* A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Id.*; *see also Jacquez v. Procunier,* 801 F.2d 789, 791-92 (5th Cir. 1986).[3]

As the Supreme Court noted in *Twombly,* plaintiffs are required to plead facts showing the existence of plausible claims to protect defendants and third parties from having to bear the burden, distraction, reputational damage, "and enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence'" to support a claim. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)(quoting *Dura Pharmaceuticals, Inc.* v. *Broudo,* 544 U. S. 336, 347 (2005). A "largely groundless claim" should not be allowed to "'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Dura,* 544 U.S. at 347. This conclusion is underscored when considered in light of Federal Rule of Civil Procedure 11 (which requires the plaintiff's allegation to be well grounded in evidence) and 28 U.S.C. §1937 (which proscribes counsel from engaging in unnecessary litigation). So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "this basic deficiency should . . . be

---

[3]        Although a motion to dismiss is directed at the face of the pleadings, a court may also review any document incorporated into the pleadings and take judicial notice as permissible under the Federal Rules of Evidence. *Lovelace v. Software Spectrum,* 78 F.3d 1015, 1017-18 (5th Cir. 1996); *see also* Fed. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding."). A document is "incorporated in the complaint" if the plaintiff refers to the document in the complaint. *See Scanlan v. Tex. A&M Univ.,* 343 F.3d 533, 536 (5th Cir. 2003). Defendant requests that the Court take notice of the exhibits referred to herein under these authorities.

exposed at the point of minimum expenditure of time and money by the parties and the court." 5 Wright & Miller §1216, at 233–234.  This is just such a case:

A.   <u>**All Four Counts Asserted Against Majorie Are Barred By Litigation Privilege**</u>

Texas law "recognizes a privilege for any communication, oral or written, uttered or published in the due course of a judicial proceeding." *Intel Corp. v. IntelLogistics, Inc.,* No. 05-cv-2255, 2006 U.S. Dist. LEXIS 34361, at *3 (S.D. Tex. May 30, 2006) (citing *Reagan v. Guardian Life Ins. Co*., 166 S.W.2d 909, 913 (Tex. 1942)) (internal quotation omitted). The privilege establishes immunity from suits for damages for defamation, tortious interference, and any other claims to which the privilege applies.  *McIntyre v. Wilson*, 50 S.W.3d 674, 683 (Tex. App. – Dallas 2001, pet denied); *see also Intel Corp*., 2006 U.S. Dist. LEXIS 34361 at *4. The rule "applies to communications related to both proposed and existing judicial and quasi-judicial proceedings." *Johnson v. Wichita Falls Housing Authority*, No. 2-06-416-cv, 2007 Tex. App. LEXIS 9192, *9 (Tex. App.--Fort Worth Nov. 21, 2007, no pet.) (citing *Reagan*, 166 S.W.2d at 912). The privilege applies to statements made in court or through pleadings or other papers filed in the case. *James v. Brown*, 637 S.W.2d 914, 916-917 (Tex. 1982). The privilege also applies to an out-of-court communication made by an attorney as long as the communication has some relationship to the proceeding and is in furtherance of the attorney's representation. *Odeneal v. Wofford*, 68 S.W.2d 819, 820 (Tex. App. – Dallas 1984, writ ref'd n.r.e.); *Russell v. Clark*, 620 S.W.2d 865, 868 (Tex. App. – Dallas 1981, writ ref'd n.r.e.). Finally, the privilege is absolute: it is not lost even if the communication is false or expressed with malice. *Hurlbut v. Gulf Atl. Life Ins*., 749 S.W.2d 762, 768 (Tex. 1987).

The claims asserted against Majorie in this case must be dismissed, with prejudice, under these standards. As shown in Section II above, the Original Petition openly seeks damages for

defamation, tortious interference, and malicious prosecution in connection with Majorie's role as counsel in connection with the CRT's submission of the Notice of Claims to the CRT's beneficiaries. The Notice of Claims—and the pleading to which it refers—were either filed in the pending QST Adversary Proceeding or related to it and were in furtherance of Majorie's role as CRT's counsel.[4] Indeed, the Nevada District Court itself has already ruled that: (a) Majorie's clients were absolutely privileged to engage in the conduct for which Majorie is now being sued (*see* Exhibit 2-17); and (b) that direct lenders "cannot be held [liable] for purportedly interfering with the servicer's servicing of the Loans when the direct lenders had the statutory and common law right to direct the performance of the servicer. . . ." *See* Exhibit 30 (892 Case Doc. 1820 Order) at 20/lines 12-15 and lines 22-25. Thus, the Court can and should dismiss the claim asserted against Majorie with prejudice under the litigation privilege.

**B.     The Tortious Interference Claims (Counts 2 and 4) Are Also Barred By The Legal Justification Doctrine**

Under Texas law, the elements of tortious interference with a contract are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) that was a proximate cause of the plaintiff's damages; and (4) actual damage or loss. *Swank v. Sverdlin*, 121 S.W.3d 785, 800 (Tex. App—Houston [1st Dist.] 2003, pet. denied). Merely inducing an obligor under a contract to do what it has a right to do is not actionable interference. *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 857 (Tex. App. 2001); *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 431 (Tex. 1997). Liability for tortious interference also will not lie if the defendant acted with "justification" through the exercise of either: (a) one's own legal rights; or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77-

---

[4]     Majorie's alleged role in submitting the CRT's Notice of Claims is assumed solely for the purposes of this motion.

78 & 80 (Tex. 2000); *see also Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690-91 (Tex. 1989); *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.,* 356 S.W.3d 54, 77 (Tex.App.—Houston [1st Dist.] 2011, no pet.); *Mans and Smith Partnership v. D.K. Boyd Oil and Gas Co., Inc.*, 223 S.W.3d 1, 19 (Tex.App.—El Paso 2005, pet. denied). As the Texas Supreme Court  ruled  in *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 211 (Tex. 1996):

> if the trial court finds as a matter of law that the defendant had a legal right to interfere with a contract, then the defendant has conclusively established the justification defense, and the motivation behind assertion of that right is irrelevant. . . . Improper motives cannot transform lawful actions into actionable torts . . . .

The Court should dismiss the tortious interference claims (Counts 2 and 4) under the foregoing authorities. The Original Petition, September Order, and Notice of Claims conclusively show that the alleged acts of interference were "committed" in the course of Majorie's representation of the CRT and the CRT's lawful authority to send notice to its beneficiaries that there were claims which they could choose to have the CRT pursue or not pursue on their behalf. *Twombly* and the authorities referred to at the beginning of this Section IV prohibit the plaintiffs from avoiding dismissal through allegations of improper motives or mischaracterizations of the formal Notice of Claims by the CRT as a "solicitation letter" for clients by Majorie. Thus, the Court should dismiss the tortious interference claims with prejudice under the legal justification doctrine.

**C.**     **The Malicious Prosecution Count (Number 3) Fails To Allege Elements Of A Claim**

In order to assert a claim for malicious prosecution in Texas, the plaintiff must allege, among other things, that the proceeding was terminated in plaintiff's favor and that the plaintiff has suffered "special injury." *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207-208 (Tex. 1996)(*on reh'g*). A dismissal without prejudice—as opposed to abated or open to re-pleading—

does not meet the "plaintiff's favor" requirement. *See McCall v. Tana Oil & Gas Corp.*, 82 S.W.3d 337, 349-50 (Tex. App. – Austin 2001). The inconvenience, embarrassment, harm to reputation, discovery costs, or attorney's fees attendant to the filing of a lawsuit against the plaintiff is *not* "special injury." *See Finlan v. Dallas ISD*, 90 S.W.3d 395, 406 (Tex. App. – Eastland 2002, pet. denied); *NT Dev., Inc. v. Petersen*, 79 S.W.3d 230, 235 (Tex. App. – Fort Worth 2002, pet. denied); *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 131 (Tex. App.-- Houston [14th Dist.] 1994, no writ). Moreover, when there is no wrongful act other than the initiation of a groundless proceeding, the injured party has no cause of action for malicious prosecution; the party's only remedy is the recovery of costs by rule at the conclusion of the proceeding. *Louis v. Blalock*, 543 S.W.2d 715, 715-19 (Tex. App.--Amarillo 1976, writ ref'd n.r.e.).

Count 3 of the Original Petition, entitled "Malicious Prosecution," fails to state a claim under these authorities. The Nevada District Court's orders in the QST Adversary Proceeding show that the CRT's claims have not been dismissed with finality against either Duncan or Cross.  Moreover, the Original Petition fails to plead any "damage" other than the ordinary inconvenience, embarrassment, and reputational harm, and costs attendant to being sued. The Court should therefore dismiss this claim under FRCP 12(b)(6). Finally, the Original Petition fails to allege any "wrongful act" other than filing the Cross-Claim and allegedly participating in the Notice of Claim by the CRT.

## D.    <u>Alternatively, The Court Should Order  Plaintiffs To Re-Plead</u>

The Court should dismiss all four counts with prejudice for the reasons stated in sections IV A through C above. However, if the Court declines to do so, it should at least order the Plaintiffs to re-plead certain aspects of their claims. For example, although the Original Petition

is replete with allegations about defamatory "statements" with "malice," it does not identify a single, specific statement in either the Notice of Claims or the Cross-Claim and explain why the statement is defamatory, whether or not the statement was false, and what facts support the conclusion that the statements were made with "malice." *See Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000)(defining "malice" as publishing a statement the defendant knew or strongly suspected could present, as a whole, a false or defamatory impression of events). Without such allegations, it is impossible for the Court and Majorie to know what is at issue, and why.

Similar problems exist with respect to Plaintiffs' lack of facts concerning their alleged "damages." The Original Petition alleges that paragraph 77 that "the actions of Majorie have had a profound effect on both Cross and Duncan to continue their trades in the very small industry surrounding fractionalized lending and the various levels of expertise both Cross and Duncan provide in that space." But this conclusory statement and the rest of the pleading  is devoid of any factual allegations as to how that "profound effect" manifested itself, to whom the Plaintiffs' reputations were damaged, and why. Again, this is precisely the type of pleading that *Twombly* requires to be dismissed. Thus, if the Court does not dismiss the case with prejudice in its entirety (which it should do), it should dismiss the claims unless they are re-plead to meet the "plausibility" requirements of *Twombly*.

## V.

## <u>THE COURT MUST DISMISS THIS CASE UNDER TEXAS' "ANTI-SLAPP" STATUTE</u>

Chapter 27 of the Texas Civil Practice and Remedies Code (the "anti-SLAPP statute") exists "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by

law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." CPRC § 27.001(2). The Fifth Circuit has held that state anti-SLAPP statutes applies to state law claims pending in federal court. *See Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 168-69 (5th Cir. 2009).

Section 27.003(a) of the statute allows a defendant to file a motion to dismiss a "legal action" if the action "is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." The statute provides that the Court must hold a hearing on the motion within thirty days of the filing, unless the docket conditions of the court require a hearing after that date. CPRC § 27.004. The statute provides for shifting burdens between the movant and the party bringing the legal action in question.  The burden is on the movant to show from the pleadings and a *preponderance of the evidence* that the legal action is based on, relates to, or is in response to the party's exercise of the right of free speech, right to petition, or right of association.  CPRC § 27.005(b). Once that finding is made, the burden shifts to the party bringing the legal action to establish by *clear and specific evidence* a prima facie case for *each essential element* of the claim in question. CPRC § 27.005(c). If the non-movant fails to meet its burden, the case must be dismissed and the movant awarded its costs, reasonable attorney's fees, and other expenses—as well as  such sanctions the court determines to be sufficient to deter the non-movant from bringing similar actions in the future. CPRC § 27.009.

The Court should dismiss the Original Petition and set a separate hearing for the issuance of damages and costs under this statute. "Exercise of the right of association" is defined by CPRC § 27.001(2) to mean a "*communication between individuals who join together to collectively express, promote, pursue or defend common interests*." Section 27.001(4) defines "[e]xercise of the right to petition" to include a "*communication in or pertaining to a judicial*

*proceeding*" or a communication "in connection with an issue under consideration or review of an issue" by a judicial body, a communication "reasonably likely to encourage consideration or review" of an issue by a judicial body, or a communication "reasonably likely to enlist public participation in an effort to effect consideration of an issue" by a judicial body. "Communication" in turn is broadly defined to include the "making of a statement or document *in any form or medium*, including oral, visual, written, audiovisual, or electronic." CPRC § 27.001(1). There is no question that the present lawsuit by Duncan and Cross meets these criteria.

As shown in Section II above, the express purpose of the CRT and its Notice of Claims procedure is to allow the direct lender beneficiaries "aggregate the claims" and pursue their common interests through litigation against persons who caused them damage. The Original Petition openly asserts that Majorie should be held liable for allegedly "participating" in such activities. This is precisely the type of lawsuit which the anti-SLAPP statute was intended to – and does – prohibit. *See James v. Calkins*, Cause No. 01-13-001180-CV (Tex. App. – 1st Dist. Aug. 21, 2014)(copy as Exhibit 31), slip op at. 21-22 (applying anti-SLAPP statute to claims for fraud and barratry brought against an opposing party and her counsel, where the movants were sued for allegedly asserting fraudulent claims in pending litigation and for filing a *lis pendens* which referred to those allegedly "fraudulent" claims).

This conclusion is not changed by the so-called "commercial speech" exemption for legal actions "brought against a person engaged in the business of selling or leasing goods or services . . . ." CPRC § 27.010(b). The Fifth Circuit has ruled that this exclusion applies to an attorney's solicitation of new potential clients. *See NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742 (5th Cir. 2014). But, although the Original Petition bends over backwards to allege that

Majorie solicited potential clients with which he had no relationship in a "letter," the pleadings and the documents themselves show no such thing. To the contrary: (1) the document in question was formal Notice of Claims assignment (not a "letter");  (2) the document was sent by the CRT (not Majorie); (3)  the document was sent to the CRT's beneficiaries  (not "strangers"); (4)  the document was submitted lawfully under the Notice of Claims assignment procedure established in the September Order (and not as an unsolicited advertisement); and (5) the document sought assignments of claims to the CRT (and not clients for Majorie).

For these reasons, the Court should require Duncan and Cross to meet their shifted-burden under the statute and, if they fail to do so, enter the findings contemplated by section 27.007(a), dismiss this case as required by section 27.005, and set the matter for a supplemental hearing on damages, attorney's fees, costs, and sanctions under section 27.009.

## VI.

## <u>CONCLUSION</u>

For the foregoing reasons, Majorie requests the following relief: (a) transfer of the case to the Nevada District Court; (b) dismissal of the claims under FRCP 12(b)(6), with prejudice; (c) hold a hearing on  under the Texas anti-SLAPP statute, enter findings in favor of Majorie  under CPRC § 27.007(a), dismiss this case as required by CPRC § 27.005, and set the matter for a supplemental hearing on damages, attorney's fees, costs, and sanctions under CPRC §27.009; and (d) grant Majorie such other relief to which he proves entitled.

April 6, 2015                          By:    /s/ Francis B. Majorie
                                              Francis B. Majorie, TBN 12851420
                                                fbmajorie@themajoriefirm.com
                                              THE MAJORIE FIRM, LTD.
                                              3514 Cedar Springs Road
                                              Dallas, Texas 75219
                                              (214) 522-7400
                                              (214) 522-7911 (Facsimile)

                                              **ATTORNEYS FOR DEFENDANT
                                              FRANK MAJORIE**

## CERTIFICATE OF CONFERENCE

This certifies that, on April 6, 2015, the undersigned conferred by email with counsel for Plaintiffs (Joey Messina) about the relief requested in the venue portion of the foregoing motion. Mr. Messina indicated that Plaintiffs opposed a transfer of the case. The motion is therefore being submitted to the Court for ruling.

                          _____/s/_____
                          Francis B. Majorie

## CERTIFICATE OF SERVICE

This certifies that the undersigned caused a duplicate of the foregoing motion and memorandum, as well as the exhibits submitted in connection therewith, to be served on counsel for the Plaintiffs (Joey Messina) through the ECF system on April 6, 2015.

                          _____/s/_____
                          Francis B. Majorie